UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA,  <br>　　　　　　Plaintiff,  <br>vs.  <br>FRANCISCO LEYVA-CORONA,  <br>　　　　　　Defendant. | 03:05-CR-0062-LRH (RAM)  <br><br>ORDER |

The issue before the Court, raised by a motion to suppress (# 23[1]) is whether a confession made by Defendant Francisco Leyva-Corona ("Defendant") after eight days in custody is involuntary under 18 U.S.C. section 3501. The United States has opposed the motion. An evidentiary hearing was held before further briefing by both parties (# 28 & 29) was allowed. For the reasons discussed below, the Court finds that it is not and denies the motion to suppress.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 13, 2005, Defendant was stopped by the Nevada Highway Patrol ("NHP") in Pershing County, Nevada for speeding. As part of the routine stop the NHP runs a check through the NCIC database. When Defendant's name was run through the NCIC database it was discovered that he had previously been convicted of an aggravated felony and deported. The NHP then contacted the law enforcement support center ("LESC") and confirmed the NCIC hit. As a result of the LESC confirmation, an administrative hold was placed on Defendant and he was arrested and booked in the Pershing County jail.

---

[1] References to (# XX) refer to the Court's docket.

1    Defendant was released from any state custody on the same day he was booked into the
2 Pershing jail, March 13, 2005.  From that point on he was held solely under the administrative
3 hold placed on him by the Bureau of Immigration and Customs Enforcement ("BICE") through
4 the LESC information.  Defendant was held in the Pershing jail until he was transported, either
5 on March 16, March 17 or March 21, 2005, to the Washoe County jail where his detention under
6 the administrative hold was continued for removal proceedings.  The Washoe jail is roughly 100
7 miles away from the Pershing jail.
8    Defendant was then held in the Washoe jail until March 21, 2005, when he was
9 interviewed by Special Agent Oscar Galarza ("Special Agent Galarza") and Special Agent
10 William Bergin ("Special Agent Bergin").  Special Agent Galarza and Special Agent Bergin took
11 Defendant into a large room and provided him with a standard form generally used when cases
12 are going to be processed criminally.  Prior to completing the form Special Agent Galarza
13 informed Defendant that he was facing criminal charges for re-entering the United States.
14 Special Agent Galarza then read the form to Defendant in his native language of Spanish and
15 filled in Defendant's answers to the questions in the form.
16    The initial portion of the form provides Defendant with his *Miranda* rights.  Special
17 Agent Galarza read Defendant's rights to him and Defendant initialed next to the rights to signify
18 that he understood them.  The form then asks questions intended to get Defendant's name,
19 citizenship, place of birth, last entry into the United States and the place of that entry, previous
20 deportations and whether permission was granted for re-entry, and any fears of persecution in
21 Defendant's home country.  Most of the questions are designed to elicit information that would
22 assist in a criminal prosecution for illegal re-entry.  Defendant answered each of the questions
23 and in doing so incriminated himself in many ways.
24    Charges were then filed against Defendant for violation of 8 U.S.C. section 1326, illegal
25 re-entry. On March 23, 2005, Defendant was finally brought before a Magistrate Judge.
26 ///
27 ///
28 ///

**LEGAL STANDARD FOR A VOLUNTARY CONFESSION**

Under 18 U.S.C. section 3501(b):

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that an such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

**DISCUSSION**

The Court, in determining the voluntariness of the confession at issue, is faced with determining several issues. First, there is a dispute of the date of Defendant's arrest. Second, whether section 3501(c) mandates the confession be suppressed. And, third, whether the confession was voluntary. The Court does note that the statements contained in the answers provided to Special Agent Galarza's form questions are considered incriminating by both parties and are defined by statute as a confession. *See*, 18 U.S.C. § 3501(e) (defining confession as "any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing").

   *1.    Date of Arrest*

The parties have bickered over when exactly Defendant was arrested and placed within the custody of BICE and the federal government. Defendant argues it was when the administrative hold was placed on him after his traffic stop, which would normally only result in a citation, resulted in an arrest. The United States argues Defendant was not arrested until Defendant was actually taken by BICE officers and official charges were filed. The United States calculates this date to be March 21, 2005.

The Court is unable to find, and the parties have cited no case law definitively stating that an administrative hold, when no other reason compels the detention of a defendant, is considered an arrest for the purposes of determining a confession is involuntary. However, for the purposes of this motion, the Court will consider the hold to be the type of arrest or other detention

1  contemplated by section 3501.  Defendant was kept behind bars and treated as any other prisoner
2  within the jails.  If it were not for the administrative hold, he would have been released at the
3  conclusion of his traffic stop for speeding.  Thus, his confinement, as well as his initial arrest and
4  booking, was precipitated by the administrative hold placed on him.  Such treatment is
5  indistinguishable from an arrest.
6        Accordingly, for the purposes of determining the voluntariness of his confession, the
7  Court determines that Defendant was arrested on March 13, 2005, when an administrative hold
8  was placed upon him.  Under this analysis, Defendant did not provide his confession until a full
9  eight days after his arrest, through which time he was continually confined.
10       2.     *Effect of Section 3501(c)*
11       Defendant makes the argument that his confession must be excluded based on the fact
12 that it was not taken within the six hours immediately following his arrest or other detention as
13 required by 18 U.S.C. section 3501(c).  The Court notes that section 3501(c) has not been
14 interpreted to require the confession be excluded if not made within six hours of arrest or
15 detention.  Rather, the Ninth Circuit has concluded that "confessions given more than six hours
16 after arrest during a delay in arraignment are admissible if voluntary, although the trial judge
17 under subsection 3501(b) may take into account delay in arraignment in his determination of
18 voluntariness."  *United States v. Halbert*, 436 F.2d 1226, 1236 (9th Cir. 1970).  Thus, any
19 argument that the delay in obtaining the confession should result in its dismissal will be taken up
20 by the Court in its analysis of section 3501(b).
21       3.     *Voluntariness Under Section 3501(b)*
22       As noted above, five factors are provided in section 3501(b) to aid the Court in
23 determining whether a confession was given voluntarily.  However, these factors are not
24 exclusive, as the trial judge "shall take into consideration all the circumstances surrounding the
25 giving of the confession."  18 U.S.C. § 3501(b).  Thus, the Court will analyze the voluntary
26 nature of the confession under the totality of the circumstances test, see *Schneckloth v.*
27 *Bustamonte*, 412 U.S. 218, 226-27 (1973), paying particular mind to the five enumerated factors
28 of section 3501(b).

  a. <u>Time Between Arrest and Arraignment</u>

While the statute contemplates a consideration of the time between a defendant's arrest and his arraignment, the courts have recognized that a more thorough analysis considers the time between arrest and the confession to determine whether it was voluntary. *United States v. Monroe*, 397 F.Supp. 726, 732 (D.C.D.C. 1975); *see also*, *Halbert*, 436 F.2d at 1237 ("delay *after* the confession and before his federal arraignment obviously had no effect on the prior confession and would not render it inadmissible"). In the present case, the Court is assuming the administrative hold placed on Defendant worked as an arrest for the purpose of assessing voluntariness. Thus, the time frame between arrest and confession is eight days.

The Court notes that this length of time is significant. Eight days being held in jail is beyond the normal time frames contemplated by courts deciding this issue. *See, e.g. Halbert*, 463 F.2d at 1237 (two day period); *United States v. Perez-Bustamante*, 963 F.2d 48, 51-53 (5th Cir. 1992) (60 hour period cause for considerable concern). The Court does not condone such a lengthy detention and notes that such a length of time weighs strongly in favor of suppressing the statement. However, while the Court has the discretion to exclude the confession based on such a delay, the remaining factors lead the Court to conclude that the delay is not significant enough for the Court to consider this case to be the hypothetical first laid out in *United States v. Alvarez-Sanchez*, 975 F.2d 1396, 1397 (9th Cir. 1992), *reversed on other grounds*, 511 U.S. 3500 (1994), that allowed for "circumstances in which delay in arraignment will require suppression of a confession regardless of the voluntariness of the confession." 975 F.2d at 1397.

  b. <u>Knowledge of Offense at Time of Confession</u>

The Court notes that the testimony taken at the prior hearing shows Defendant was made aware of the fact that he was facing criminal charges for re-entering the United States. While the Court notes that the exact charges were not presented to Defendant, the fact that he knew criminal charges were contemplated and that they were based on his re-entry to the United States after being deported weighs in favor of admitting the confession.

  c. <u>Knowledge of Right to Remain Silent</u>

Defendant was read his *Miranda* rights in his native language of Spanish, and was

provided a form which listed those rights in English and Spanish. Defendant initialed that form, on the page where the rights were delineated, to confirm for the Special Agents interviewing him that he understood his rights and was willing to continue with the interview. Included in the rights listed on that form and read to Defendant is the right to remain silent and the warning that "anything you say can be used against you in court or in any immigration or administrative proceeding." The fact that Defendant was made aware of his right to remain silent and the effects of choosing to speak weighs in favor of admitting the confession.

        d.        <u>Knowledge of Right to have Counsel Present</u>

Also included in the rights read to and initialed by Defendant are the right to talk to a lawyer before answering questions, the right to have an attorney appointed should Defendant not be able to afford one, the right to stop answering questions should Defendant choose at any time to request a lawyer, and the right to communicate with the consular or diplomatic officers from Defendant's home country. The fact that Defendant was made aware of his rights to have and utilize counsel before answering any or all of the questions on the form weighs in favor of admitting the confession.

        e.        <u>Actual Utilization of Counsel</u>

The final factor, whether the defendant was without the assistance of counsel when questioned and when giving the disputed confession, weighs slightly in favor of suppressing the statement. While Defendant wilfully chose to waive his right to counsel, the fact that he was without counsel at the time he made the incriminatory statements must be construed to lend weight toward suppression as Defendant had been incarcerated for eight days before answering these questions before two BICE agents without the assistance of counsel.

        f.        <u>Other Factors</u>

Under the totality of the circumstances test, factors such as a defendant's lack of education or low intelligence, and the repeated and prolonged nature of questioning or the use of physical punishment have been taken into consideration. *Schneckloth*, 412 U.S. at 226-27. In the present case, the Court is swayed by the fact that no evidence was presented that the confession at issue was a product of any coercion or questionable tactics by the United States. In

fact, the confession was obtained through one brief interview consisting of Defendant voluntarily filling out a standard investigation form used by BICE. There was no heavy-handed questioning, no deprivation of food or sleep, no threats of violence, retribution or even further restrictions on Defendant's liberty. Defendant was spoken to in his native language and apprised of all his constitutional rights. The encounter was so simple and concise that the Court is almost convinced that it affected Defendant no more than a simple booking procedure. Thus, the remaining factors not considered explicitly in section 3501(b) weigh heavily in favor of admitting the confession.

  g. <u>Final Balancing</u>

When considering all the factors surrounding Defendant's confession, the only aspect that truly concerns the Court is the eight day detention between Defendant's effective arrest and his confession. However, considering the remaining factors weigh so heavily in favor of admitting the confession, and noting the fact that the final determination of voluntariness will be placed in the hands of the jury, see 18 U.S.C. § 3501(a) (if the judge determines the confession voluntary it shall be admitted and the judge "shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances"), the Court is unwilling to conclude that the present scenario is the type in which a voluntary confession could be excluded solely based on the delay between arrest and confession.

## CONCLUSION

It is therefore ORDERED that the Defendant's motion to suppress his confession (# 23) is DENIED.

DATED this __23rd__ day of November, 2005.

_____
LARRY R. HICKS
United States District Judge